You may step up and identify who's going to argue. Thank you, Your Honor. Clifford Berlow on behalf of the two mercury entities. And James Bellaratus on behalf of the defendants of L.A. What's your name again? James Bellaratus. Okay. And you know our time frame, and we've been more liberal in the last case, so it'll probably be the same on this. In addition, you realize that's not a speaker microphone, that's a recorder. So please speak up. Well, thank you again, Your Honors, and may it please the Court. The fundamental argument that we've put before the Court here is that our petition was either timely when filed or it must be deemed timely by operation of law. And as to every argument we've made in this case, the critical fundamental facts I believe are the starting place here are the following. After engaging in a series of what I think can only be described as confusing and according to the Department of Revenue misleading discussions about when our filing deadline was, we were told explicitly that our filing deadline was 20 days from the day we received the notice, specifically October 1st. Now, that is so fundamentally important as at least a starting place here because it means one of two things must have been true about that statement. Either it was correct, in which case the circuit court erred here. And we certainly believe it was correct. That's the point we make in Sections 2 and Section 4 of our brief. Or it was incorrect, in which case it means the Department of Revenue violated our constitutional right to procedural due process or they forfeited the argument. Either way, the result here should be the same. We are entitled to our day in court. We are entitled to the opportunity to have an Illinois State judge rule on the merits question presented, which is whether or not the administrative law judge got this right in holding that this amusement tax cannot be lawfully applied to our clients. Now, we've obviously identified... Counselor, is Merkur relieved of all obligation to look at an ordinance, Section 3480, that says that 20 days from the date of mailing is the date of protest? Well, I think there are two answers to your question, Justice Alice. The first is that, no, we're not absolved of having to look at the ordinance, but we're not required to look at a nonexistent ordinance. Section 34A doesn't exist. ADA does, in fact, exist, but it wasn't referenced to us. What the Department chose to do... Okay, so is Merkur relieved of all obligation to figure out for itself when the hearing needs to be? Our obligation is the same as the obligation that the Supreme Court identified in Grimm. And our obligation is to not... The obligation, I guess, if you want to put it, is that when the Department of Revenue chooses to try and inform a party about a filing deadline, it cannot provide information that's confusing and misleading. Do you think that the initial September 9th notice was trying to inform you of the deadline? Well, Your Honor, what I think it was trying to do... Well, I think what it did was it said that we would automatically receive an administrative hearing simply by nonpayment. And so that, in and of itself, would be confusing and misleading. If that was all we had received and done nothing, I don't think that this is even a remotely close place under Grimm. We would have simply followed the misadvice we received from the Department, and then there would be no way that the Department could plausibly argue that there is anything other than a due process violation here. I think that's true regardless of the subsequent communications as well, however. So when it said, if you don't pay by a date certain, we will schedule an administrative hearing and stick a collection agency on you, right? That's what it said? That's... You think that the administrative hearing they were referring to was a protest hearing? Well, Your Honor, I think it's important to recognize how the different parts of that notice work together. This was labeled a jeopardy tax assessment, which is a notion that is unknown as a matter of Cook County law, but is very well known not just statewide, but nationally. And it's important to recognize the basic distinction here. A jeopardy assessment is a post-deprivation remedy. You apply the assessment, you pay, and then you have the hearing. You're talking about state law? I'm talking about state and the national trend. Neither of which apply here? Absolutely not, Your Honor. Okay. I mean, the administrative law judge seemed to know what a jeopardy tax assessment was. Well, that's... Yes. She cited sections, I don't know, 3465, 3463, and talked about this is the kind of assessment that you do when you don't have the books, you don't have the numbers. And so, in any event... Well, Justice Ellsworth, if I can explain, though. Yeah, yeah, yeah. The reason she was discussing that was that one of our initial arguments in the case was that because there's no such thing as a jeopardy tax assessment as a matter of county law, then there was no jurisdiction to apply the jeopardy assessment against us. It's notable that the Department of Revenue turned around and said, no, no, no, we concede that there's jurisdiction here in the Department of Administrative Hearing. Our response is that it was a tax assessment, and we absolutely concede that there's jurisdiction. It was only after losing on the merits that the Department of Revenue turned around and said, never mind, there was never any jurisdiction here. So it does seem that they're talking out of both sides of their mouth, at least a little bit here. So you're saying that a September 9th notice was purporting to give you a protest date hearing, a protest date deadline of September 26th? That's how you think that was a reasonable read? That when it says, if you don't pay by the due date, we're going to schedule an administrative hearing? I think from the perspective of Grimm, the point is that that was confusing and misleading, and therefore it violates procedural due process, regardless of anything else. We also have then a statement in a form, which is still up on the website as of this morning, saying that you have 20 days from the date of receipt to file your protest, and then we had a confirmation email saying you have 20 days from the date of receipt to file your protest, and that is October 1st, and that is just what we did. This case is indistinguishable from Grimm for a couple of reasons. First, in Grimm, the Illinois Supreme Court pointed out that the agency provided confusing and misleading information to a party. The same is true here. The Department of Revenue, time and again, provided information to us that was confusing, at best, and misleading. Did they have an obligation to provide any information to you about the deadline for a protest, or even the right to a protest? No, and the Illinois Supreme Court explains that in Grimm. What the Illinois Supreme Court said there was that an agency need not provide any information at all, but when it chooses to do so, it must not. Do you think that's applicable here in the context of the initial administrative hearing itself? I think it's certainly applicable to the initial notice. I think it's certainly applicable to the protest form. No, I mean the fact that they didn't have to tell you anything. That's your position, that Cook County did not have to tell you anything? That's correct. That's correct. I think that's clear from Grimm. And I think it's also, I think it's a little bit more of a challenging argument when you look at the underlying U.S. Supreme Court precedent, Jones against Flower, the Mennonite Board of Missions cases, both of which say that notice has to be constructed in a way that is reasonably calculated to appraise an individual of their rights. So I think the Illinois Supreme Court said that in Grimm. It's binding. I'm not sure that would hold up in Washington. I think I might be able to find five votes on that. But for now, I'm certainly happy to live under the rule of Grimm for a simple reason that this case can't be distinguished from Grimm. If anything, the Department of Revenue's representations here are less defensible than what the agency represented in Grimm. Recall that in Grimm, the notice that was provided was that you have 35 days from the date you were served with this notice in order to file what the Supreme Court says. Well, that's confusing because the word service is inherently ambiguous and the approach that's been adopted by the agency is counterintuitive. What we have here is an explicit statement. It is 20 days from the date you received this. That is October 1st. So in the one hand, we have an issue of ambiguity. Here, we have a very clear statement. And now, halfway through the litigation, they decided that they disagree with that statement and that So, in addition... Okay, so the first notice was September 9th. The second notice was a protest form they sent you, right? Yes, Your Honor. Okay. Do you think that protest form could be fairly characterized as an instruction manual for people who want to protest or a how-to file a protest or an answer to an FAQ or something? It seems to me like that's just the form. And you have to fill out something, right? I mean, it's a form that's not going to be tailored to a specific taxpayer. It's not going to be tailored specifically to a particular type of service that the taxpayer received. The taxpayer could have received the notice by personal delivery, in which case the department seems to view the date of delivery as the operative date. Or they could receive it by U.S. mail, in which case they receive it as the operative date as the date it was mailed. And so, I'm not necessarily saying they did it particularly well, but they write delivered slash mailed. I think with the idea that the taxpayer is going to figure out which one applies to them. Well, the problem, Justice Ellis, here is that they're saying this, and then they're leaving this ambiguity creating confusing information just like the word served in Grimm. And they're leaving it out there to the public and asking the public to resolve that confusion, and that's contrary to their due process obligation. Then they turn around and say, it is 20 days from receipt, which is October 1st. That's where the due process problem lies. What I'll add here is this, that interpretation that was provided to us via e-mail, and that is reflected in the form, is consistent by the department's own concession with the only view they have ever taken as to how this 20-day rule operates. The Department of Revenue concedes, at page 18 of its brief, that it has, in fact, always interpreted, prior practice has always been to interpret this as 20 days from the date of receipt. They have now done a 180-degree turn here midway through this litigation. So even if you disagree with me that this creates a due process problem, and I think under Grimm there's not a lot of wiggle room here, but even if you disagree with me, that means that they have changed their opinion midway through the litigation. That is the epitome of arbitrary and capricious agency action, which is unlawful. I thought Revenue's position was if it's received by personal delivery, it's the date of the delivery, which is about the only date it could be if it's personally delivered, right? And if it's received by U.S. mail, it's the date of mailing, which is what 3480A says. Well, that was not their position at the time this case was litigated. It's not their position in any published document. Why do you keep saying that? What is your basis for saying that they're switching their position? It's certainly a theme of yours, but I want to just push you on that one. Yeah, let me identify. We identify several places in our brief where previous representations have been made to the public about the 20-day rule, and they're not contested that they came from the department and that they explicitly state that they were 20 days from receipt. That is in the form of informal agency guidance that was put into the public domain, and there's nothing they can do to walk that back. Now, hold on. One of those came from 2013. Correct. You had a notice from 2013, and it said it's the date that you received this or the date of delivery, and it had little boxes next to each one. You didn't mention that in your brief, but it had boxes next to each one, which I assume was so that the person filling out the form would check the one or the other. Was that the best way to say it? Maybe not. But I took that to mean that the revenue was providing for two different possibilities, depending on which was applicable, which form of service. Now, that letter is heavily redacted. I can't tell which one, and the other didn't actually check the box, but either box. It was after this case began, and it says explicitly 20 days from receipt, so at best, while they were telling this court one thing, they were telling somebody else something else. But it was giving two different options in that form, and one of them had to be picked. I don't believe in the second form. That's true, Your Honor. The second form said date of receipt. That's from 2015. And that, I don't even know if it was personally delivered because it's all redacted. But if it was personally delivered, that answer was right. Well, certainly if Your Honor wants us to submit the underdacted versions, we can do that. I just don't see this evidence. I mean, throughout, you keep saying they're shifting their positions. I don't see – your due process argument is much more than just a shifted position. You're talking about communications. Yes. Understood, totally understood. But you keep saying throughout your briefs that they're shifting positions. I don't see any shift. Well, that's our arbitrary and capricious argument. And I think it's common ground between the parties that no agency is empowered to act in a way that's arbitrary and capricious. I think we can start from that basic premise. The second is that they concede in their brief that their prior practice was to calculate this 20 days from receipt, so they conceded it away for purposes of litigation. Third, I think that if you've got these statements in forms that have been provided to the public 20 days from receipt, I don't think that they can credibly say at this point that that was never their position and that they didn't communicate it to the public at all. When you change your position, and this is – we discuss this at page 12 of our reply brief, it is a black letter rule that you have to provide notice before you change your position, and you have to provide a reasoned explanation that specifically accounts for reliance interests. They're certainly free to change their minds, but they have to do so in a way that is consistent with their statutory obligation to provide a clear explanation for why, and they can't do it in an attempt to apply this convenient mid-litigation shift retroactively. Can I ask you something else? So this email clearly gave you the wrong information. It said date of receipt, it said October 1st, not September 29th. What do you say to – how do you respond to the county's position that – although I think they're referring to estoppel cases, but let's put estoppel aside. You've made it clear you're not arguing that. This is just an employee. You know, I mean, I think we could all agree that there are some people you probably could not ask that question of and expect it to be reliable, and there are some you could. If you went – if the Department of Revenue, an official letterhead, said your due date is October 1st, we wouldn't be having this conversation. If the chief legal counsel said this is how we interpret this. On the other hand, on the other extreme, if, you know, if you just stop some random employee in the hallway and you don't even know what they do, maybe they're the custodian, okay, we would say, well, why would you rely on something that somebody who doesn't have any authority would say? Your position is obviously that this person was high enough up. She was the person you were dealing with, right, on the – I can't remember her name, but the auditor was kind of the face of the Department of Revenue as far as you were concerned as you were negotiating this, and then once they filed, she's the one who sent you the form. But what is our standard for determining how – what significance this – what level, what level of authority, what – you know, how do we distinguish between the custodian and the head of the company? Like, what is our standard? The answer has to do with the fact that this is a constitutional claim, and therefore we're under the Monell line of cases from the United States Supreme Court. In the context of Section 1983, what the United States Supreme Court has said is that an individual employee's actions can be – unconstitutional actions can be ascribed to a state agency or state entity where that – where that person is carrying out a department policy or practice, either formal or informal. So the question is not how high up in the organization this person is. The question is whether or not this person was carrying out something that looks like a policy or practice of the agency. But what if the employee was wrong and was not carrying out the policy of the agency, but gave you the right information? Under the Monell line of cases, we might have a Section 1983 claim against that individual, but we would not have one necessarily against the state agency. But I think here, because this individual was in fact carrying out a policy, I think a practice, we've established that with evidence. There's no contrary evidence in the record to say that this was some – this was essentially an employee that had gone rogue and was saying something that had never heretofore been thought of by the agency. But we are very much in that Monell line of cases, and therefore this constitutional violation can be ascribed to the agency as a whole. That's the difference between an estoppel argument and a constitutional argument. And the reason this test in the constitutional line is so much more robust is that this is a constitutional rights sake. The U.S. Supreme Court – and bear in mind, most of – all of – Counsel, does that mean if we think that that was not revenues policy, that they didn't change around, that they were actually keeping consistent with their policy, but this one particular auditor made a mistake, that you don't have a due process claim? No, that would not be our position because we still have the other communications from the agency that can in and of themselves, in our view, give rise to a due process problem because they're every bit as confusing as the types of notices that issue in grant. I don't need the e-mail. I don't need the e-mail to win. The e-mail makes it really easy to win. I mean, I think that's the simple version of this. I think the other point I'll make here is that all of those estoppel cases that the Department of Revenue cites are all on merits questions, where the representation from the individual was, this tax does not apply to you. There's a difference when you talk in a constitutional context about procedure. This is the process that will be filed. And that's why I think courts are much more reluctant to find estoppel against the government on a merits issue, on a substance issue, than on a mere procedure issue. Remember, we're just asking to have our day in court. We just are asking to have an opportunity to have our claims heard by an Illinois court. I claim that I can certainly go over our other arguments. I think this is actually the narrowest grounds this court could rule on, is that this is not a jurisdictional deadline. I think that the Joseph B. case makes that clear. The Millennium Park Joint Venture case in tandem makes it clear. I can certainly answer any questions you have about that. I'm also happy to talk about why we think the statute supports jurisdiction for administrative hearings, regardless of anything related to the 20-day deadline. But at the end of the day, what we have here is an agency that has, in essence, halfway through this litigation, having lost on the merits, suddenly decided that this was untimely and that there was no jurisdiction by the agency tasked with adjudicating, whether or not it was unlawful for them to apply this tax to my clients. I'd like to reserve a few minutes for rebuttal, if there are any other questions at this time. I just wanted to say that I've made mistakes in my career. It's difficult for me to stand up here and say that the mistakes were made on the part of the representative of the taxpayer, but I believe that that is what happened in this case, and that is why the tax protest was filed late. It's not because of the notice. It's because of a mistake. It wasn't just the taxpayer representative who made a mistake here, right? Yes, the Department of Revenue's employee made a mistake. There's nothing in telling the counsel for the plaintiff that the date was October 1st, when it was in fact September 29th. She made a mistake. I don't think there's anything in the record that shows that that was a deliberate move by the employee. I believe she actually believed that, and that's what she told them. But was that information sought because the form that was sent out was unclear or confusing? Well, I would say, I don't know. I don't know what was in the mind of the representative of the plaintiff, but the form, the tax assessment said, mailed, there's a stamp on it, it says, mailed September 9th. It did not advise the plaintiff of their right to appeal to the circuit court, as it did not have to. There is a protest form either included within that assessment or subsequently sent. I don't know which of the two. Was either one of those things scratched out or circled, for example, mailed, delivered? I believe it's page 420 of the record. The tax assessment with the big stamp saying mailed September 9th is on that page. I don't think that was my recollection is that that piece of the record, that assessment was not scratched out. There are other copies of the assessment that appear at various points in the record that are redacted, but they're the same, it's the same assessment. It's just in there several times because people have written on it. I'm sorry, I lost my train of thought. Can I ask you a couple questions about this notice? Sure. You're right, it says mailed September 9th. So one of the things it says is, if payment is not received by the due date, the Cook County Department of Revenue will schedule an administrative hearing and refer this matter to a collection agency. What did you mean by an administrative hearing? What did the department mean by an administrative hearing? Yeah, we'll start with that. What did the department mean? And then we can talk about what a reasonable person would have thought it meant. You know, I have to say that that's, it's not consistent with the ordinance 34-88, which says that, well, it's actually not 34-88. Actually, it is. It says that if you don't file your protest and petition for hearing within 20 days of the mailing of the assessment, that assessment is going to become final. Right. And so the notice seems to suggest otherwise. I'm not going to say that the items in the notice say things that they don't say or don't say things that they do say. I'm not going to go, I'm not going to get into that. I'm, you know, for total honesty here. You guys have cited a lot of provisions in the county code, if I can just call it the county code, and you talk about Section 2-908, and it talks about how referrals can be made to DOA. Yes. For notices of violation or notices of protest. So I assume that probably what you meant by that was a notice of violation. Well, but it doesn't say that. And so if I'm the lawyer for Mercury or if I'm just Mercury, I see that and I think, oh, it looks like there's going to be an administrative hearing anyways. Like maybe if I don't pay by the due date, that's deemed a protest, which wouldn't be an unreasonable thing to think that by not paying, I'm saying, no, I'm not paying. I'm protesting. And then you schedule a hearing. Well, we did have a section in our brief where we addressed the 2-908 versus 2-907. I know. I was just referencing that to try to make sense of what this possibly could have meant other than a protest hearing. I don't think you meant a protest hearing here, but that's just what you meant. But reading this, doesn't this leave someone to think that they are going to get that protest hearing without doing anything? A given person? By a date, by the way, that bears no relationship to anything, which is September 26th. Understood. A given person might think that. For example, if we're talking about a pro se litigant, the pro se litigant might think that, because the pro se litigant is not familiar with, you know, ordinances that have time periods in them. But we have a dueling concept here, which is that the appellate court can affirm for any basis apparent on the record. And the record here shows, without me getting into it, because it kind of makes me feel bad to say it, but counsel in this case was a very experienced tax counsel and had significant discussions with the Department of Revenue before the assessment was even issued. She was notified that if there was not payment made, an assessment would issue and there would be a tax assessment issued upon them. There were 34 different e-mail communications. It's all in the record, but talking about the ability to protest, or even more specifically the deadline for filing a protest, there's nothing in the record to demonstrate that that was discussed ahead of time, is there? I don't think that there's anything in the record that says, by the way, you have, according to 34-80A, you have 20 days from the date of the mailing of the assessment. I believe that that's true. But there's a lot of evidence in the record that shows that the counsel was very familiar with the county's code of ordinances, cited them numerous times, knew them, seemed to be knowing them backwards and forwards. And you think that the due process question depends on how sophisticated the client is, whether the client has a counsel or not, or? It seems that the cases suggest that at least the black letter law says that the due process is a flexible concept and it depends upon the facts and circumstances. So in the Grimm v. Calica case, which was written from the perspective of a pro se litigant, even though there is mention of an attorney in the background of that opinion, we don't know what the may be. It was mailed to her lawyer. Yeah. But it's written from the perspective of the pro se person, so I don't know what that record showed. Yeah, but that's interesting that it does that, right? I mean, they're not saying this is how a lawyer should have done it. I mean, the lawyer could have looked up the administrative review law in five seconds and found Section 3103. I mean, it's not even that big of a provision. The administrative review law is like a small little island. We don't know what the – I don't know what the – But they didn't say that. They said, well, what is she supposed to do? How is she supposed to find it? They're looking at it from Grimm's view. They're looking at it from the pro se litigant's view. Why aren't we looking at it from the standpoint of somebody who doesn't have a lawyer? Because I believe that we have a different – this record is a different record than what must have been the case in Grimm. I think it's factually distinguishable. Also in Grimm, the notice said you have 35 days to file in the circuit court after the date that you were served. And then it went on to say – it purported to cite the provision of the administrative review law that defined what served meant, but it didn't cite the subsection that made it – that would have made it clear that served meant mailed. So not knowing that served meant mailed, the litigant missed the filing deadline. So in this case, we have an ordinance that counsel was familiar with. There's a reasonable inference that she was familiar with it, the uniform penalties ordinance 3480A that says 20 days from the date of mailing. And it was not – it appears that she relied upon the representation of the Department of Revenue employee, which I have to believe was a mistake and not some cynical attempt to mislead. Before I forget – I guess it was part of pattern and practice. Once it's delivered at the time, period of gain, that was the pattern and practice. You're referring to the 2013 notices. But those weren't the – again, those notices say what they say. And here's just verifying that – But those weren't the notices. That wasn't the form of notice that was received in this case. And there were no pro se individuals involved. This was totally handled by counsel. I did want to point out, because opposing counsel mentioned that we had a change in litigation posture. I was the attorney that litigated the matter in the Department of Administrative Hearings. We had a hearing on the merits. And the first time that I became aware that the petition – that the protest petition was filed late was when the ALJ issued her decision. And she said, by the way, it was filed late. But too bad. It's a statute of limitations. And you guys didn't say anything about it. So you – too bad. Well, that's why I raised it at the circuit court level, because jurisdictional issues can be raised at any time. But I would never – I would never have conducted a hearing if I'd known that the petition was untimely filed. I would have raised the issue. The first thing I would have said was it's untimely filed. Let's not have a hearing. When we get cases on the appellate court, one of the first things we do check was the notice of appeal timely filed. Right. And nothing was said. Nothing was said. I had – I have to admit, I had no reason to believe that this protest was untimely filed. My client never told me anything about it. The judge did. The ALJ did. And as I said, it's a matter that can be raised at any time. If I had known, I would have raised it. And maybe we wouldn't have had a hearing. And maybe the result would be the same as the result we have now, or maybe it wouldn't be. But the issue of jurisdiction has to be raised at some point. And I raised it down below at the circuit court level, because that's the best I could do. There certainly was no nefarious intent on my part, and I don't believe on my client's part, to sort of jerk the plaintiff around. I don't think anybody is suggesting that, counsel. Yeah, I just wanted to say that. I don't think Mercury is either. With regard to the Minelli line of cases, I don't believe that you can show relief under the 1983 except for intentional misconduct. And this record does not show intentional misconduct on the part of the employee. If anything, it was a mistake. So I don't think that that is going to be relevant. The protest form. I did want to mention the protest form. I'm not sure if the protest form was included with the assessment or if it was subsequently sent. But the protest form is for the benefit of the taxpayer. And to the extent that it says the assessment was mailed slash delivered, I believe that that's for the taxpayer to fill out. Right. The taxpayer says if they picked it up physically, if it was not mailed, they'll say it was delivered on whatever the date was. If it was mailed, they'll put in September 9th. Well, I gather that was the point of how you did it. Delivered refers to personal delivery, and mail refers to U.S. mail. But that's fine if that's what you meant to do, but we have to look at this from the viewpoint of how somebody is going to read that. And if you receive something by U.S. mail, you have two points in time. You have a date of mailing and you have a date of delivery, right? The date of mailing was September 9th. The date of receipt or delivery was September 11th. And that's undisputed, I think, in the record. So it would be strange, but it seems like if you receive this by mail, you could say delivery means the date I got it. I mean, you refer to mail as being delivered to someone's house when it arrives in their mailbox, right? So delivery, I think you probably meant it to refer to personal delivery, but it could have meant mail. So somebody reading that, couldn't they have thought that they had an option between the 9th and the 11th? It depends on who the person is and their level of experience and sophistication, I must say. If it was a first-time 21-year-old that was non-lawyer, they might have thought, as you say, that they could have thought. I have to admit that. I have to concede that. I mean, does the Department of Revenue draft its notices just for lawyers? Well, I don't know. I think that they have standard forms that they use from time to time. I don't know. I think that that tax protest, though, is something that was supposed to be filled out by the taxpayer. Of course it was. In this case, it would have been I, taxpayer, am filing this protest because my assessment was mailed on September 9th, and therefore I am now filing this tax protest within 20 days to sort of establish, to fix the fact that there is jurisdiction. That's not something that is really part of the notice that the county is sending to the taxpayer. That's something that the taxpayer is filling out. Yeah, but you make them fill it out, right? I mean, you put it on your website, and before people fill things out, before people file protests, sometimes you provide it with the notice, like that 2013 example we had, I think, and closed it. In this case, the auditor emailed it to them a few days later. I think that if the taxpayer – You know people are going to read it, in other words. It's not just some form that maybe someone might happen to stumble across. You basically are expecting the taxpayers to use that form, right? We are providing that form as a – to be used by the taxpayers. But let me say this. Suppose that the taxpayer doesn't fill out the date. When it says mailed slash delivered, and I leave it blank. I'm the taxpayer. I'm filing my protest. I leave it blank. Instead, I file my protest on, I don't know, September 20th. But I leave it blank. What I'm trying to say is I don't think that the Department of Revenue is relying upon the taxpayer to provide the correct date of mailing or personal delivery. That's something that's in the form that you can fill out. But if it's left blank, the department is going to say, we mail – they're going to consult their own records. They're going to say, here's a copy of our tax assessment. It has September 9th stamped on it. The protest that's filed by the taxpayer does not say September 9th. In fact, they left it blank. But they filed their protest on September 20th, which is well within the 20-day range. And, therefore, now the Department of Administrative Hearings has jurisdiction to hear this case. So it's not a – the form is not a requirement so that if the information is left blank, then any – they're going to say, oh, wait, what? What's my deadline? 20 days from delivered slash mailed? I don't know if any taxpayer – Section 34A of the UPA. Well, they got the chapter correct. They got the A correct also. It does say 34A. It's 34-80 small a, again. That's pretty incorrect. Again, I can't say that it says things that it doesn't say. But when you say any taxpayer would think this, I guess it's – I suppose it depends on the individual who's reading it. And that's why I cited to the line of cases that say that the court can affirm for any basis apparent in the record. And there are cases that say that everyone is presumed to know the law, statutory and otherwise. You know, you have some obligation, depending on who you are, first-time 21-year-old or a seasoned attorney to – especially if you have experience in this area, you've got to know that there is something in the ordinances that says when you have to file. You don't have to rely on the person at the Department of Revenue that you email or call up to tell you. And so that's all I really wish to say. Thank you very much. Are we ready to wrap this up? I'm sorry? Are we ready to wrap this up? I certainly hope so. Thank you. Thank you. Just a few concluding remarks here, Your Honor. The Department of Revenue could have made a record below about what its practices are, how its forms are used, all of the questions that were asked. It chose not to do that. It didn't put any evidence in the records. The only evidence in the record are the forms that have been presented indicating that they have, for a very long period of time, represented to two people, albeit confusingly at some times, that the due date is 20 days from the date of receipt. And all of the speculation that opposing counsel provided here today has no evidentiary basis in the record. And if you look at the record, all that we know is that there was one position in the past and there is a new position through this case. I am not suggesting at all that this reversal was somehow intentionally designed to manipulate a process. That's not my view at all. But it is also my view that what the email said was not a mistake. This individual was carrying out what had been the practice in a very rote way at this agency, as far as this record shows, for quite a long period of time. I also want to go back to the Minnell question. The counsel is absolutely right that there is an intent element under Minnell. But the intent in a procedural due process case is not an intent to mislead. It is an intent to provide information that would be inconsistent with their obligation to provide procedural due process. In essence, the intent here had to be the intent to carry out the policy or practice of the agency. There is no such thing as a malicious intent requirement in procedural due process, and I think this case shows why. What would we have done if that were the standard? Well, we would have said we would like to depose Mr. Belagradis. We would like to depose all of the individuals at the department who went through this. We also want their emails and every document that has ever been sent to anyone regarding this practice so that we can show up a malicious intent requirement. Obviously, that's not the law. The last point I want to make is this, because the Department of Revenue keeps going back to this idea that there are two different rules that apply when it comes to due process, one for those with sophisticated counsel and one without. First, I don't know how one is supposed to determine whether or not a counsel is sufficiently sophisticated so as to be able to be manipulated. There's no test that I can see that would allow them to mislead with impunity if someone charges a certain rate per hour and a lawyer charges less. There was an attorney in Grimm. That attorney received the notice, as Justice Ellis, you pointed out, and the idea that you would draw that distinction between Grimm and this case, I would think, would go down a very slippery slope in terms of grading the competency of counsel in procedural due process cases. The other point I'll add is this, the argument is fundamentally at odds with the U.S. Supreme Court's decisions in this area. Look at the Mennonite Board of Admissions case, and it says the government has a responsibility to provide fair and adequate procedural due process, fair and adequate notice, even to those who are sophisticated and who have lots of resources and have good legal counsel. So at the end of the day, I think it's important just to bear in mind what the Department of Revenue is in essence saying. They are not saying that there is a way to distinguish this case from Grimm. There is not a way to distinguish this case from the U.S. Supreme Court's decisions in this area. They are saying that that line of cases should be rolled back. And it strikes me that that is not the role of the appellate court when there is binding and controlling precedent from the Illinois Supreme Court. A brief last thought. The presumption that is at the heart of the Department of Revenue's argument here today was that this deadline was jurisdictional. I think that is very, very much in dispute, and it's very much in dispute because of the Joseph B. case, which says the question is whether the right that the party is seeking to vindicate was a common law right. And Millennium Park Joint Ventures says that there has been a 150-year tradition and a common law right to challenge taxes as unauthorized by law. So, Your Honors, this at the end of the day strikes me as a relatively easy case under the doctrine. And for that reason, we ask this court to give us a chance to have a ruling on the merits about whether this tax may be lawfully applied. Thank you. Thank you, Justice Sotomayor. It was very interestingly well-argued, actually kind of enjoyable, somewhat different than the briefs, I thought. And one interesting fact, this case is a case the retired Judge Al White would have loved to have played with. Anyway, I was thinking of that when you were both arguing that this is one of his perfect choices in life.